## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

RANDY SMITH,
VICTORIA GUERRERO,
and ANN WEAVER,

                Plaintiffs,

    vs.

NORTHEASTERN ILLINOIS ,
UNIVERSITY, GERALD LEENHEER,
and KEVIN CONNOLLY,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. 98 C 3555

JUDGE GOTTSHALL

MAGISTRATE JUDGE ASHMAN

FILED

AUG 2 9 2002

MICHAEL W. DOBBINS
U.S. DISTRICT COURT

### NOTICE OF FILING

TO:    Mr. Armand L. Andry
        715 Lake Street, Suite 500
        Oak Park, Illinois 60301

**PLEASE TAKE NOTICE** that on the 29th day of August, 2002, the attached
DEFENDANTS' MOTIONS IN LIMINE was filed with the Clerk of the United States District
Court for the Northern District of Illinois, Eastern Division, at 219 South Dearborn Street,
Chicago, Illinois 60604.

JAMES E. RYAN,
Attorney General of Illinois

PAULA GIROUX
Assistant Attorney General
Office of the Attorney General
100 W. Randolph, 13th Floor
Chicago, Illinois 60601
(312) 814-3739

DOCKETED
SEP 0 4 2002

### CERTIFICATE OF SERVICE

The undersigned attorney certifies that a copy of the attached documents were served
upon the above named at the above address by U. S. Mail, postage prepaid, on this the 29th day of
August, 2002.

FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS AUG 29 2002
### EASTERN DIVISION

MICHAEL W. DOBBINS
U.S. DISTRICT COURT

RANDY SMITH,                          )
and ELBERT REEVES,                    )
                                      )      No. 98 C 3555 consolidated with 98 C 5580
           Plaintiffs,                )
                                      )      JUDGE GOTTSHALL
    vs.                               )
                                      )      MAGISTRATE JUDGE ASHMAN
NORTHEASTERN ILLINOIS ,               )
UNIVERSITY, and GERALD LEENHEER,      )
                                      )
                                      )                    DOCKETED
           Defendants.                )
                                                           SEP  4 2002

## DEFENDANTS' MOTIONS IN LIMINE

NOW COME Defendants by their attorney, JAMES E. RYAN, Attorney General of Illinois

and move to exclude the following evidence and testimony, in limine, from the trial of plaintiffs'

claims:

**1.      Testimony of witnesses as to allegations of race discrimination or retaliation**

**against themselves.**

This case concerns the claims of Randy Smith and Elbert Reeves as to race

discrimination, hostile work environment, and retaliation in their employment with Northeastern

Illinois University (NEIU). These claims are brought under 42 U.S.C. 2000e (Title VII),

and 42 U.S.C. Sections 1981 and 1983. Defendants are NEIU and Gerald Leenheer, a lieutenant

in NEIU's Public Safety Office.

Plaintiffs have listed as witnesses and included in the Final Pretrial Order numerous

allegations concerning the experiences of former plaintiffs in this case, Ann Weaver and Victoria

1



Guerrero, and others. If these witnesses are allowed to testify as to their own experiences with race discrimination and retaliation, defendants will be forced to defend each allegation of discrimination or retaliation, thus creating a "trial within a trial" or run the risk of appearing to admit these witnesses' allegations if no defense is tendered. *Gilty v. Village of Oak Park,* 919 F.2d 1247, 1250 (7th Cir. 1990). Evidence as to the perceptions of other employees at NEIU that they have also suffered discrimination should be excluded as irrelevant and highly prejudicial.

The proffered evidence should also be excluded under Federal Rule of Evidence 403. E.g., Henderson v. AT&T, 918 F.Supp. 1059 (S.D. Tex. 1996) (motion to sever granted because, among other reasons, the large number of plaintiffs' witnesses against AT&T testifying at trial about numerous unrelated claims, would create unfair prejudice to AT&T). Admitting this testimony will greatly prolong the trial, confuse the jury as to what issues they are supposed to decide, and will prejudice the defendants.

In addition, this court has already determined in its order granting in part and denying in part Defendants' Motion for Summary Judgment, that former plaintiffs Guerrero and Weaver lacked evidence to establish a prima facie case of race discrimination, hostile environment, or retaliation. In light of that finding, it makes even less sense to allow these witnesses to present their claims to this jury in the hope that the jury will find merit in their allegations.

Weaver, Guerrero, and other witnesses should be allowed to testify, if at all, only as to facts within their personal knowledge regarding alleged discrimination suffered by the plaintiffs, not their own allegations. Furthermore, any comments or actions about which these witnesses might testify must have been heard or observed by the plaintiffs themselves, in order to constitute

2

evidence of a hostile environment. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345, 347 (7th Cir. 1999). If plaintiffs were not present for such comments, they cannot contribute to the plaintiffs' perception of their environment as hostile and are therefore irrelevant and potentially highly prejudicial to the defendants.

**2.      Testimony about how similarly situated employees were treated more favorably must have proper foundation.**

Many of the plaintiffs' facts as set forth in their Response to Defendants' Rule 56 Statement were without foundation and conclusory. As the court noted in its March 22, 2002, Order, although plaintiffs' assertions allowed them to avoid summary judgment, they "will have to provide foundation and prove [their claims] at trial." March 22, 2002 Order, p. 15, n. 7, attached as Exhibit A.

Plaintiffs should be cautioned *prior* to trial to provide this foundation. Without such an instruction, defendants will be forced to object to this improper testimony, the jury will already have heard the testimony, and defendants may appear to be trying to keep information from the jury.

In particular, plaintiffs must show that similarly situated employees committed the same acts as they did, but were treated more favorably. In plaintiffs' summary judgment response, they attempted to show this element by conclusory statements without factual support. For example, Smith and Reeves were both disciplined for leaving their campus patrol area and going to a game room, called Diversions. In his summary judgment response, Smith stated that another officer in the Public Safety Office, Mohammed Hamideh, "left his patrol area many times without authorization" and wasn't disciplined. March 22, 2002 Order, p. 14. Smith also claimed that he

3

had researched computer files and discovered others that did the same thing. This kind of conclusory, unsupported statement is almost impossible to defend against and should not be permitted by the court. Unless the proper foundation is laid before such a statement is made (and it is highly unlikely that plaintiffs can do so) evidence such as this should not be put before the jury. And, again, defendants should not be put in the position of making constant objections to such testimony.

Plaintiffs have made similar conclusory statements regarding the alleged division of the Public Safety officers into the A Team and the B Team, and the more favorable treatment of the A Team. Their response to the summary judgment contained statements such as the A Team "could do whatever they wanted" but the B Team was "limited as to what they could do." Order, p. 12. Again, a statement such as this put before the jury with no foundation is unfair to the defendants, and plaintiffs should be strongly cautioned to testify factually and not in this conclusory manner.

### 3. Plaintiffs' claim of hostile work environment must be based on race.

To show a "hostile work environment, "plaintiffs must show that workplace was permeated with discriminatory conduct --intimidation, ridicule, insult--that was severe or pervasive enough to alter the conditions of their employment." *Harris v. Forklift Systems.,* 510 U.S. 17, 21 (1993). Much of the evidence which plaintiffs seek to admit to show hostile environment has nothing to do with race (or the plaintiffs) and many of the incidents about which plaintiffs complain never mention race.

For example, Defendant Gerald Leenheer is alleged to have called plaintiffs, and others, "motherfuckers." This statement is unpleasant and inappropriate, but it is not racial as a matter of

4

law. Plaintiffs should not be allowed to present Leenheer's alleged statements referring to Smith and Reeves as "motherfuckers" as a racist statement. The fact that Leenheer lacks gentility does not make him a racist.

### 4. Racial jokes allegedly told on third shift should be excluded.

This court has already stated that the racial jokes allegedly told at the Public Safety Office on third shift do not support a claim of harassment because plaintiff Smith was not aware of them. March 22, 2002 Order, p. 10. Testimony on this subject should therefore be excluded.

### 5. Testimony regarding Leenheer's alleged "nigger" statements should be excluded.

There are few words more volatile in a race discrimination case than the word "nigger." The allegation that Leenheer said this word on several occasions may have severe negative repercussions on defendants' case. Defendants urge the court to review any proposed testimony that Leenheer used this word to determine if the testimony is reliable, because defendants have reason to believe that this testimony was fabricated.

Two student aides working for former plaintiff Ann Weaver as clerks in the Parking Office of the Department of Public Safety executed affidavits saying that they both heard Leenheer say "Oh those motherfucking niggers" in the summer of 1997; one of the aides, Mindy Tran, also claimed that in the spring of 1997 Leenherr told Officer Hopeton Rowe, who is black, "I am going to get two motherfucking black niggers fired." Plaintiffs Exhibits 27, 28 to Plaintiffs' Response to Motion for Summary Judgment, attached as Exhibit B. These affidavits were executed in February 2001, nearly four years after the statements were made, and in that intervening period there has been no mention of these statements. Furthermore, in January 1998,

5

Tran was interviewed by two investigators from an outside consulting firm who had been asked to investigate possible race discrimination and civil rights complaints in the Public Safety Department. In that interview, Tran said, according to the interviewer, that "in her opinion there is no discrimination with the Department . . . based on race" but that Leenheer uses "inappropriate language, and she has overheard him referring to two unidentified officers as "mother fuckers." Report of Interview of Mindy Tran, attached as Exhibit C. She does not mention hearing the word "nigger." Even though Tran's failure to mention Leenheer's statement prior to executing her affidavit could be used to impeach Tran on cross examination, these statements may irreparably prejudice defendants if they are allowed into evidence.

In addition, the court considered the "nigger" statements only as evidence that Leenheer was involved in the attempt to discipline Smith and Reeves, not as part of plaintiffs' claim of hostile work environment based on race, because Smith and Reeves did not claim they knew about the statement, and it therefore did not contribute to their perception that they were subjected to a hostile environment. *Hardin, supra.* That determination provides an alternate basis to exclude the "nigger" statement because it adds nothing to plaintiffs' claim of retaliation, which is based not on race but on the fact that plaintiffs protested discrimination, and it is highly prejudicial to defendants.

Plaintiff Smith has also claimed the word "nigger" was used in his presence on several occasions, but as with Tran, has never made this claim until his deposition in January 2001. In his interview with the Quest Consultants, he never mentioned this word being used by Leenheer or anyone else, nor did he ever make such a claim in his many grievances, memoranda, letters, or formal or informal complaints of discrimination. Exhibit D, Quest Interview Summary. Nor

6

did Smith mention the alleged use of the word "nigger" by Leenheer in his Answers to Defendants' First Set of Interrogatories, even though he is asked to "Set forth each and every fact which supports your allegations in the Amended Complaint, Par. 9." Paragraph 9 of the Amended Complaint specifically alleges harassment of black employees by Leenheer. Based on these facts, it is reasonable to conclude that plaintiffs have fabricated the allegation that Leenheer used the word "nigger" and they should be excluded from putting this inflammatory claim before the jury.

Plaintiffs also submitted an affidavit from a Public Safety officer, Gene Salecker, that Leenheer used the word "nigger" in 1984, but the word was not directed to a black person and had nothing to do with either Smith or Reeves; again, neither plaintiff claims that he was present when the statement was made. This testimony should be excluded on the grounds that it would be highly prejudicial and is irrelevant to these plaintiffs' claims. *Gorence v. Eagle Food Ctrs., Inc.* 242 F.3d 759, 762 (7th Cir. 2001) (bigoted remark actionable only if it results in injury to plaintiff; there must be a real link between bigotry and adverse action).

Salecker also claimed in his affidavit that in 1992 another officer, not a supervisor, called Salecker a "nigger lover" after Salecker had made a statement supporting Smith's version of an incident. Salecker does not allege that he ever reported this incident, so that NEIU would have no knowledge of it; he does not allege that he told Smith or Reeves about it at that time; and the prejudicial effect of this statement far outweighs any relevance it might have. This statement should also be excluded.

For these reasons, defendants seek exclusion of any testimony that Leenheer or anyone else ever used the word "nigger" without a prior review by the court for reliability of the

7

testimony and its relevance to the issues.

6.   **Testimony that black employees were evaluated less favorably.**

Plaintiffs also appear to contend in paragraph 39 of the Second Amended Complaint that

black employees were evaluated less favorably than white employees.   Any testimony on this

contention should be excluded.  The Seventh Circuit has consistently held that a negative

evaluation is not an adverse action, so that comparing ratings of minorities with non-minorities is

irrelevant.  In addition, how could any comparison be meaningful without a full-blown

examination of the performance of all the employees who worked for a particular supervisor?

Again, the plaintiffs should not be allowed to casually throw out this kind of accusation without a

solid evidentiary foundation, nor is the treatment of other black employees or their evaluations

relevant to the issues in this trial.

7.   **Evidence pertaining to the reasons that Defendant Leenheer left NEIU.**

Defendant Leenheer retired under the terms of an agreement with NEIU well after this

complaint was filed.  The terms of that agreement have nothing to do with this lawsuit, and

plaintiffs should be precluded from eliciting any information regarding the terms of Leenheer's

retirement agreement.  The only information necessary to present to the jury is that Leenheer is

no longer employed by NEIU and has retired.

8.   **Plaintiffs should be required to state their claims and the acts on which they**

**will rely since they failed to do so in the pretrial order.**

In light of plaintiffs' many allegations, and the different theories of liability for which

these allegations will be offered, defendants ask the court to require plaintiffs to set forth the

specific acts on which they are seeking to recover damages, and those acts which they will offer

8

as background evidence, even though those acts may be beyond the applicable statutes of limitations period. Plaintiffs have not done so in the pretrial order, referring instead to their claims only in general terms. Defendants are likely to be prejudiced by this shotgun approach, and ask the court to require plaintiffs to set forth their claims clearly in order to avoid jury confusion and prejudice to defendants.

Wherefore, defendants pray that these motions *in limine* be granted.

Respectfully submitted.

JAMES E. RYAN
Attorney General of Illinois

PAULA GIROUX
JANET FASANO
Cecilia Nguyen
Assistant Attorney General
General Law Bureau
100 W. Randolph, 13th Floor
Chicago, Illinois 60601
312-814-3739

9

# SEE CASE FILE FOR EXHIBITS